(35 Misc. Rep. 330.)

COLWELL v. TINKER.

(Supreme Court, Special Term, New York County. June, 1901.)

BANKRUPTCY—DISCHARGE—JUDGMENT FOR CRIMINAL CONVERSATION.

    Under Bankr. Act 1898, § 17, subd. 2, providing that no judgment shall be vacated by a discharge in bankruptcy where the judgment was recovered in an action for willful and malicious injuries to person or property of another, a judgment recovered against one for criminal conversation

with plaintiff's wife, who thereafter filed a petition in bankruptcy, will not be vacated by the discharge of the bankrupt, where it was recovered in an action by the creditor.

Action by Frederick L. Colwell against Charles A. Tinker. Judgment for plaintiff. Motion by defendant to vacate the judgment on the ground of a discharge in bankruptcy. Motion denied.

Nelson Smith, for the motion.

Thomas McAdam, opposed.

GILDERSLEEVE, J. On February 9, 1897, the plaintiff recovered a judgment against the defendant for $50,000 for criminal conversation with plaintiff's wife. The defendant here moves to have said judgment canceled and discharged of record. The defendant swears that he had no real estate at the time of the entry of the judgment, and has not had any interest in real estate since such recovery, and that the judgment, therefore, is no lien upon any real estate. On the 13th of September, 1899, defendant filed a petition for adjudication in bankruptcy. The plaintiff objected to the discharge of defendant in bankruptcy on the ground that the only creditor of the bankrupt, as shown by the schedules, was the plaintiff, the owner of the aforesaid judgment, and that said judgment was recovered in an action involving the willful and malicious injury to the person or property of another, and therefore came under the exceptions enumerated in subdivision 2 of section 17 of the bankruptcy act, and was in consequence not a debt from which defendant could be discharged. The objections of plaintiff were duly considered and overruled by Judge Brown on or about January 27, 1900, and on February 2, 1900, an order of the district court of the United States for this district was duly entered discharging the defendant from all debts which existed on September 13, 1899, the date of the filing of the petition for adjudication in bankruptcy, "excepting such debts as are by law excepted from the operation of a discharge in bankruptcy." Section 1268 of the Code provides that, at any time after one year has elapsed since a bankrupt was discharged from his debts under the bankruptcy act, he may apply, upon proof of his discharge, to the court in which a judgment was rendered against him, for an order directing the judgment to be canceled and discharged of record, and, if it appears that he has been discharged from the payment of that judgment or the debt upon which it was recovered, such order must be granted. Section 17, subd. 2, of the bankruptcy act provides that the discharge shall not release the bankrupt from judgments in actions for willful and malicious injuries to the person or property of another. The plaintiff claims that the decision of Judge Brown overruling plaintiff's objections to the discharge of defendant does not render the question of defendant's discharge from the said judgment res adjudicata, for the reason that in his opinion the federal judge stated that the discharge would be operative against other debts, whether enumerated or not, and that jurisdiction did exist, and that he declined to pass on the question whether the plaintiff's judgment herein was dischargeable or not. The opinion is not handed up on this motion,

but this statement of the plaintiff's counsel appears to be conceded by his adversary, so I will accept it as true. The question, therefore, which I am here called upon to decide, is whether an action for criminal conversation is one for "willful and malicious injuries to the person or property of another." It is, of course, not pretended that Tinker, in forming his culpable relations with Mrs. Colwell, was actuated merely by "a willful and malicious" desire to injure Colwell; nor, indeed, is there any positive reason for believing that such a motive played any part in the matter. It may well be said, however, that it was a "willful injury," as it was not done inadvertently. It was an injury to the person of Colwell, in the sense that his peace of mind and happiness were greatly damaged by the loss of his wife's affections. Code Civ. Proc. § 3343, subd. 9. It was also an injury to the property of Colwell. A husband has a right to the services of his wife, while they live together and she is not engaged in a separate business, and he also has a right to her society and comfort. Tinker, by his seduction of Mrs. Colwell, has deprived Colwell of the services, comfort, and society of his wife. We have, therefore, unquestionably, a willful injury to the person and property of another. But was that injury malicious? As I have above intimated, there is no proof of actual malice. But was there constructive malice? "Malice" has been defined as a disregard of social duty and of the rights of others. Graham v. Association, 98 Tenn. 48, 37 S. W. 995. The term "malice," as applied to torts, such as criminal conversation, does not necessarily mean that which must proceed from a spiteful, malignant, or revengeful disposition, but a conduct injurious to another, though proceeding from an ill-regulated mind not sufficiently cautious before it occasions an injury to another. As defined by Judge Brown in the case of U. S. v. Reed (C. C.) 86 Fed. 309:

"Malice consists in one's willful doing of an act, or willful neglect of a known obligation, which he knows is liable to injure another, regardless of the consequences; and a malignant spirit or a specific intention to hurt a particular individual is not an essential element."

It seems to me that the judgment which defendant here seeks to have vacated was recovered in an action founded upon willful and malicious injuries to the person and property of another. It was, therefore, under the provisions of section 17, subd. 2, of the bankruptcy act, not affected by defendant's discharge in bankruptcy. Motion denied, with $10 costs.

Motion denied, with $10 costs.