(66 App. Div. 42.)

## DISLER v. McCAULEY.

(Supreme Court, Appellate Division, Second Department. November 29, 1901.)

BANKRUPTCY—JUDGMENT—DISCHARGE.

> Under Bankr. Law, § 17, providing that a discharge in bankruptcy shall release all debts of the bankrupt, save judgments in actions for fraud or for willful or malicious injuries to the person or property of another, a judgment against a bankrupt for breach of marriage promise, in an action in which seduction was proven, is canceled by a discharge in bankruptcy.

Appeal from special term.

Action by Josephine Disler against James J. McCauley. Judgment for plaintiff. From an order denying defendant's motion to cancel the judgment (71 N. Y. Supp. 949), he appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Robert H. Wilson, for appellant.
Edward Kaufmann, for respondent.

WOODWARD, J.  On the 30th day of January, 1900, Josephine Disler recovered a judgment in the supreme court, county of Kings, against James J. McCauley, for $3,295.80, for breach of promise of marriage.  Subsequently, and in the month of March, 1900, defendant filed a petition in bankruptcy, with schedules of his indebtedness and assets; the schedules of indebtedness showing only four creditors,—the plaintiff for the amount of her judgment, and three others aggregating $60.  The defendant was adjudged a bankrupt, and procured a stay of execution, from the United States district court for the Eastern district of New York, of the judgment above mentioned.  The plaintiff moved to vacate the stay, which motion was denied, and no appeal has been taken from the order denying the motion.  In June, 1900, the bankrupt applied for his discharge, and was discharged without opposition; the plaintiff never having received notice of such application for discharge.  In or about the month of July, 1901, the plaintiff obtained an order for the examination of the judgment debtor in supplementary proceedings, which was duly served on the defendant; such order being returnable on July 15, 1901.  The defendant moved, by an order to show cause, returnable at the same time and place as said order for examination in supplementary proceedings, for the cancellation and discharge of the judgment for $3,295.80 as aforesaid; and this appeal is from the order denying defendant's motion to so cancel said judgment.

Section 1268 of the Code of Civil Procedure provides that:

"If it appears upon the hearing that he [the judgment debtor] has been discharged from the payment of that judgment, or the debt upon which such judgment was recovered, an order must be made directing said judgment to be cancelled and discharged of record."

And, as no question of the sufficiency of the moving papers is suggested, it was the duty of the court at special term to make the order asked for, unless the plaintiff's judgment comes within the exceptions enumerated in section 17 of the bankruptcy law, which provides as follows:

"A discharge in bankruptcy shall release the bankrupt from all of his provable debts except such as are judgments in actions for fraud or obtaining property by false representations or for willful and malicious injury to the person or property of another."

The plaintiff contends (and the learned court at special term adopts the theory) that the action upon which the judgment was recovered was not founded upon a contract, merely, but was based upon a breach of contract of marriage, coupled with seduction; that the seduction was pleaded in the complaint and proved upon the trial, and was "as much the foundation of the damages as the breach of promise of marriage."  It is probably true, at least in a measure, that the amount of the damages was predicated upon the seduction; but the right of action rests wholly upon the contract of marriage and its breach.  The exception in the statute is of "judgments in actions for fraud or obtaining property by false representations or for willful and malicious injury to the person or property of another," and the fact that the accompanying seduction operated to increase the damages which naturally attach to a breach of contract

of marriage has nothing to do with the character of the action. The law has reduced itself to the maxim that "that to which a person assents is not esteemed in law an injury" (Broom, Leg. Max. [2d Ed.] 193; Bartley v. Richtmyer, 4 N. Y. 38, 43, 53 Am. Dec. 338); and, as seduction presupposes the consent of the person seduced, no right of action accrues to the plaintiff in this action by reason of her seduction. Nor did the common law recognize seduction as an injury to the person seduced, in giving a right of action to the father; but the whole theory of the law was that, as the father was entitled to the services of his daughter, the act of the seducer, unfitting her, by reason of her pregnancy or other resulting injuries, for performing these services, was an injury to the father or master, for which he might recover. "This action," say the court in White v. Nellis, 31 N. Y. 405, 407, 88 Am. Dec. 282, 283, "is not maintainable upon the relation of parent and child, but solely upon that of master and servant," and this doctrine is recognized in a long line of cases. See Lawyer v. Fritcher, 130 N. Y. 239, 29 N. E. 267, 14 L. R. A. 700, 27 Am. St. Rep. 521, and authorities cited. So, in the criminal aspects of the question, seduction was not a crime at common law, but was made so by chapter 111 of the Laws of 1848, which has since been re-enacted in section 284 of the Penal Code. It does not punish seduction generally, but only when it is committed, under promise of marriage, upon an unmarried woman of "previous chaste character." People v. Nelson, 153 N. Y. 90, 96, 46 N. E. 1040, 1042, 60 Am. St. Rep. 592, 596. The policy of the law is not to recognize seduction as a crime against the person of the female unless it is brought about by a promise of marriage; and the seduction must be of an unmarried woman, who must be of "previous chaste character," which has been construed to mean actual personal virtue. People v. Nelson, supra. The statutory crime is rather in the promise of marriage given under the circumstances, which is the moving cause of the consent of the female, than in the seduction, and moves upon the theory of a fraudulent procurement of the consent. The plaintiff, having no cause of action for the seduction, to which she consented, cannot make that fact a substantive part of her cause of action. It was proper to plead the seduction as an element of damages, for it cannot be questioned that a young woman who has surrendered her person to a man, and who is pregnant by him, is in a position to suffer a larger measure of damages than one who is merely disappointed in her expectations of married happiness, with no loss of standing in the community, but it makes no part of her cause of action. It is the breach of the contract of marriage which gives the plaintiff a right of action, and the consequences directly flowing from the breach of that contract constitute the measure of damages; and, among the elements of the damages, it was proper for the jury to consider the sacrifices which the plaintiff had made, relying upon the consummation of the promise of marriage. But this does not bring the plaintiff's cause of action within the exceptions mentioned in the bankruptcy law, and, while in this particular case it may be questioned if the ends of justice are subserved, we

discover no reason in law why the order canceling the judgment should not have been granted. The seduction of the plaintiff, in the absence of a breach of the contract under which the result was accomplished, did not constitute a tort, as against the plaintiff, and it was only judgments in "actions for fraud * * * or willful and malicious injury to the person or property of another" that are excepted from the operation of the bankruptcy law. This language is very strong. It refers, not to the ordinary results of negligence, but "to willful and malicious injury to the person," and it is very difficult to conceive of a willful and malicious injury to one who has consented to the act. We are of opinion that while the legislature, with the particular circumstances of this case before it, would be willing to extend the exception to cases of this character, there is an entire absence of language which would justify the con struction put upon the statute by the plaintiff, and that the order appealed from should be reversed.

The order appealed from should be reversed, without costs, and motion granted, without costs. All concur.