JACOB CRAMER, Appellant, v. WILLIAM HARMON, Respondent.

Kansas City Court of Appeals, April 1, and June 24, 1907.

1. **MALICIOUS PROSECUTION: Evidence: Grand Juror.**  In an action for malicious prosecution the defendant may be contradicted by the evidence of a grand juror in order to show the inconsistency of his testimony and whether he made a full statement to the grand jury.

2. ———: ———: ———.  In an action for malicious prosecution certain questions asked a grand juror as to the evidence of defendant before the grand jury are passed upon, and it is held

that one was immaterial, and another highly improper since it did not tend to show what the defendant had omitted to state before the grand jury, but what it was claimed he had said, and assumed that the prosecution was malicious, and the answer is highly prejudicial in stating that the defendant wanted to indict plaintiff and another.

3. ———: Plaintiff's Guilt or Innocence: Instruction: Probable Cause. A plaintiff in an action for malicious prosecution is presumed to be innocent and the question of his guilt or innocence is not a subject for investigation, the real question being whether upon the facts the defendant had probable cause to believe the plaintiff guilty of the charge preferred against him; and an instruction summarized in the opinion is approved.

4. FALSE ARREST: Evidence: Sufficiency of. The evidence relating to a complaint of false arrest is reviewed and held insufficient to sustain the charge.

Appeal from Jackson Circuit Court.—*Hon. Andrew F. Evans,* Judge.

. AFFIRMED.

*Leon Block* and *Frank P. Sebree* for appellant.

(1) The court committed error in sustaining the defendant's demurrer to the evidence under the second count of the petition. There was evidence that the plaintiff was wrongfully and without a warrant arrested by the defendant and detective Sparks. McCaskey v. Garrett, 91 Mo. App. 354; Boeger v. Langenburg, 97 Mo. 390; 1 Bouvier's Law Dictionary, 755; 12 Am. and Eng. Ency. Law (2 Ed.), pp. 721, 724, 733, 735, 738, 740, 741, 751, 757, 769 and cases cited; 2 Am. and Eng. Ency. Law, pp. 885, 886, 887; Monson v. Rouse, 86 Mo. App. 97; Ahern v. Collins, 39 Mo. 145. (2) Even if the grand juror's testimony was of itself incompetent, the defendant made such testimony competent and waived objections to it by proving by defendant and Paulson what their testimony had been before the grand jury, and by cross-examining the grand juror about other matters. Phelps v. Salisbury, 161 Mo. 1; State v. Palmer, 161 Mo.

152; Johnston v. Johnston, 173 Mo. 91; Carlin v. Haynes, 74 Mo. App. 34; Guntley v. Staed, 77 Mo. App. 155; Mc-Pherson v. Andes, 75 Mo. App. 204; Masonic Society v. Lackland, 97 Mo. 137; Bruce v. Bombeck, 79 Mo. 231; Richardson v. Marceline, 73 Mo. App. 360; Stalzer v. Dold Packing Co., 84 Mo. App. 565; Holloway v. Kansas City, 184 Mo. 20; Webb v. Railway, 89 Mo. App. 604; Highfill v. Railway, 93 Mo. App. 219; Ess v. Griffith, 139 Mo. 322. (3) The grand juror's testimony was competent. 1 R. S. 1899, secs. 2490, 2491, 2506, 2508; State v. Thomas, 99 Mo. 235; State v. Ragsdale, 59 Mo. App. 590; Insurance Co. v. Healey, 151 Mass. 537; Jones v. Turpin, 53 Tenn. (Heisk.) 181. (4) The evidence of the grand juror had no effect on the merits or the result of the trial, and, even if incompetent, its admission ought not to disturb the verdict. Swanson v. Sedalia, 89 Mo. App. 121; Bank v. Slattery, 166 Mo. 620.

*I. J. Ringolsky* for respondent.

(1) The court did not err in giving a peremptory instruction to find for the defendant on the second count in plaintiff's petition, as there was no substantial evidence to sustain a recovery by the plaintiff. Charter of Kansas City, 1898, sec. 20, p. 200; Powell v. Railroad, 76 Mo. 83; Warren v. Flood, 72 Mo. App. 200. (2) The essential facts in this case are undisputed. Therefore the court should have given the peremptory instruction asked for by the defendant, directing the jury to find a verdict for him on the third count in the plaintiff's petition. Firer v. Lowery, 59 Mo. App. 97; Boogher v. Huff, 99 Mo. 183; Warren v. Flood, 72 Mo. App. 205; Powell v. Railroad, 76 Mo. 83. (3) In a suit brought to recover for a malicious prosecution the plaintiff must prove, first, that the prosecution was terminated; second, that there was no probable cause for the prosecution, and third, that the prosecution was insti-

gated with "malice." The instructions given by the court of its own motion, as well as those given at the request of the plaintiff, do not require that the jury find that the defendant instigated or continued the prosecution brought against the plaintiff with "malice." Sharpe v. Johnston, 59 Mo. 557; Sharpe v. Johnston, 76 Mo. 660; Firer v. Lowery, 59 Mo. App. 96; Stubbs v. Mulholland, 168 Mo. 47. (4) In a malicious prosecution suit the fact that one has another arrested with hostile motives and for the purpose of forcing a payment of money is not proof that such person acted with malice. Nor is such conduct and motives equivalent to malice. But from such motives it is in the province of the jury to infer legal malice. Clark v. Thompson, 160 Mo. 467; Peck v. Chouteau, 91 Mo. 138.

BROADDUS, P. J.—The plaintiff's petition consists of three counts, but as the first was not relied on by the plaintiff on the trial the appeal relates to only the second and third counts. The second count set forth a cause of action for the alleged wrongful act of the defendant in having the plaintiff arrested on a charge of having received stolen goods. That is to say, false arrest. The third count contains a charge that the defendant wrongfully caused plaintiff to be indicted and imprisoned for feloniously receiving stolen goods. That is to say, malicious prosecution. At the conclusion of the hearing the court sustained a demurrer at the request of defendant to plaintiff's case on the second count. The case on the third count was submitted to the jury; they returned a verdict in favor of plaintiff, which on motion for rehearing the court set aside. The plaintiff appealed from both the action of the court in sustaining a demurrer to his evidence on the second count and in sustaining the motion for a rehearing on the third count.

The defendant testified before the grand jury on

the hearing of the charge on which plaintiff was indicted. On the trial he stated that while before the grand jury he was asked questions, which were taken down, and that he told everything as near as he could. Plaintiff called R. S. Adkins, the foreman of the grand jury, to contradict defendant and asked him if defendant, when he was before that body, made certain statements. To the introduction of this evidence defendant excepted on the ground that it was incompetent for a grand juror to testify to anything about what happened before that body while he was a member. The objection was overruled and the evidence was admitted. Several other questions of a similar character were asked the witness and answered over defendant's objections. It is contended by defendant that the evidence of the grand juror was incompetent.

Section 2489, Revised Statutes 1899, prescribes the following oath to be administered to the grand jury: "You do solemnly swear you will diligently inquire and true presentment make, according to your charge, of all offenses against the laws of the State, committed or triable in this county, of which you have or can obtain legal evidence; the counsel of your State, your fellows and your own, you shall truly keep secret . . . ." Section 208, *idem,* provides: "No grand juror shall disclose any evidence given before the grand jury, nor the name of any witness who appeared before them, except when lawfully required to testify as a witness in relation thereto; . . . Any juror violating the provisions of this section shall be deemed guilty of a misdemeanor." Section 2506, *idem,* provides: "Members of the grand jury may be required by any court to testify whether the testimony of a witness examined before such jury is consistent with or different from the evidence given by such witness before such court; and they may also be required to disclose the testimony given before them by

any person, upon a complaint, against such person for perjury, or upon his trial for such offense."

The apparent object of the introduction of the evidence of the grand juror was to show that the evidence of defendant was inconsistent or different from what it was before the grand jury. The plaintiff on the hearing before the grand jury was charged with having received stolen goods from one, Lurie, defendant's business clerk. During the trial of this case, defendant was asked on cross-examination if he had settled for the loss of the stolen goods with Lurie and taken note of Lurie's brother for one thousand dollars as part compensation for such loss. He admitted having received such note, but denied that he adjusted his loss with said Lurie. The grand juror, Adkins, was asked: "Did he tell the grand jurors that he had made a settlement with relatives of the man he claimed had stolen the goods, and had obtained a note for $1,000, in settlement?" He answered, "No, sir, he didn't say it." Defendant also admitted having received a copyright from said Lurie's brother in the settlement. The witness stated that he had not disclosed that fact to the grand jury. These two questions and answers were strictly admissible as they went to show that defendant's statements before the grand jury were inconsistent with his testimony on the trial — that he failed to disclose to the grand jury matters, the truth of which he admitted on the trial.

The witness was further asked: "Did Barmon when he testified before the grand jury tell you that when he went down to Cramer's place with the officer, that the officer told him, Barmon, right in Cramer's place, that there was no necessity for any disturbance, that he knew Cramer and that Cramer was all right?" The answer was: "No, I don't think he told the grand jury any thing of the kind." And also the following: "Did he tell you he had nothing against Jake Lurie, but he wanted him held as a menace against Cramer to get

money from Cramer — did he tell you that?" The answer was: "No, I think he tried to have both of them indicted." "Q. Did he tell the grand jury that Cramer had gone to the police station and that the matter had been investigated by Inspector Halpin and that Cramer had paid the money he paid out for the goods, did he tell you that? A. No, sir. Q. That Inspector Halpin had said these goods oughtn't to have been taken in the way they were? A. I don't think he did — not that I remember."

The first question and answer referred to an immaterial matter and could not have prejudiced defendant.

The next question was highly improper and did not refer to anything that defendant testified to in the case. Defendant admitted at no time that he had nothing against Lurie, and that he was holding him as a menace against Cramer to get money from him. The purpose of the interrogation was not to show that defendant had omitted to state a fact but to show that he had omitted to state what plaintiff claimed he had said, which was denied. And the question also assumed as true that which in effect made out a case of malicious prosecution on the part of defendant, which was the question for the jury. The question was incompetent upon any theory. While the answer was that he did not make any such statement, the witness went on to state that defendant tried to have plaintiff, as well as Lurie, indicted. The answer was also highly prejudicial as it went to show that defendant was making an effort to indict plaintiff, leaving the jury to put their own construction on the matter, whether favorable or unfavorable to defendant.

As defendant testified that he had made a full disclosure of all the facts to the grand jury he would have had no cause to complain because plaintiff also went into the matter, had plaintiff confined his investigation

within reasonable bounds to show that he had not done so. [State v. Palmer, 161 Mo. 152; Phelps v. Salisbury, 161 Mo. 1; Carlin v. Haynes, 74 Mo. App. 34.] But, as we have seen, he was not content with attempting to contradict defendant and otherwise impeaching his testimony, but went further and violated all the rules governing the admission of evidence. As the court saw fit under the circumstances to grant a rehearing, we do not feel warranted in interfering with its discretion in that respect.

Defendant's objection to instruction numbered nine is not well taken.

Instruction numbered one is also objected to as being erroneous. The instruction tells the jury that the guilt or innocence of the plaintiff of the crime for which he was indicted is not an issue in the case. But the jury are told that the definition of the crime is given for the sole purpose of enabling the jury to take the elements which go to make up the crime into consideration in determining whether or not defendant had probable cause to believe, and did believe, when he caused plaintiff to be indicted or prosecuted, if defendant did have him indicted or prosecuted, he was guilty of the crime of receiving stolen goods. The complaint is that the jury were told that the question of plaintiff's guilt or innocence was not an issue in the case. The instruction is unobjectionable in the respect defendant claims. The law assumes that the plaintiff was innocent of the charge because he has been found not guilty or has been discharged by due course of law. In theory, there is no such thing as a malicious prosecution of a guilty person. It is clear therefore that the question in the case was not one whether plaintiff was guilty or innocent of the charge of receiving stolen goods, but whether upon the facts the defendant had probable cause to believe him guilty of such charge. This is a-b-c law, but it seems that it is necessary sometimes to repeat it. And further

it is not inconsistent with other instructions given. They are in harmony in every respect.

The plaintiff is insisting that the action of the court in sustaining the demurrer to his evidence on the second count of his petition was error. The plaintiff under said count introduced evidence to show that previous to his indictment and arrest thereunder, the defendant caused him to be arrested under the same charge for which he was indicted. It is admitted that there was no process issued for plaintiff's arrest. The evidence in a general way in plaintiff's behalf showed that some of the city detectives in company with defendant went to plaintiff's place of business where they found some of the goods which Lurie had stolen from defendant; that the detectives took these goods to police headquarters; that when they started with the goods in a wagon the officer asked plaintiff if he would like to go in the wagon, when he said, "No, why handle me in that way? I am not going to run away, I will walk with you — it is better to walk than go in the patrol wagon;" whereupon defendant said, "Take him in the patrol wagon." The wagon then left; that plaintiff walked to the police station in company with defendant and the officer and while on the way he asked the officer to go by the place of business of a Mr. Denebein to get him to go on his bond, to which the officer consented; and that when he got to Mr. Denebein's place after some conversation the three went together to police headquarters, plaintiff walking between the officer and defendant.

After the matter had been investigated by the officers the defendant told them to lock plaintiff up, but they refused to do so, and he was told to go home. One witness stated that before the parties started to police headquarters the officers told plaintiff to go with them. The defendant's testimony is contradictory of what has been stated. And the evidence is also that the officers told the plaintiff that he could go home and refused to

Bushnell v. Railroad.

detain him on the ground that they had no warrant for his arrest. The inference to be drawn from the action of the officers is that they only desired the presence of plaintiff with the goods at the police station for the purpose of learning the circumstances connected with the theft and that they did not consider him under arrest. In fact, Mr. Sparks, one of the officers, testified that he did not arrest plaintiff. We do not believe plaintiff was restrained of his liberty. And the fact that defendant wanted him arrested has no probative force in itself; nor because he was invited to ride in the patrol wagon used for the purpose of conveying persons under arrest. The officer took plaintiff's word that he would not run away and it was a very natural act that he should walk with defendant and the officer to the police station, as all parties were interested in the investigation that was to be made when they arrived there. The action of the court in sustaining the demurrer to plaintiff's evidence on the second count was proper.

Affirmed. All concur.